Good morning, Your Honor. May it please the Court. Will Bergstrom on behalf of the Plankton's Appellants in this matter. I'd like to reserve three minutes for rebuttal and I'll keep my eye on the clock. Great, thank you. The laws at issue in this case prevent 18 to 20-year-olds from buying semi-automatic centerfire rifles, and it also prevents 18 to 20-year-olds from any long guns in the state of California at purchase if they don't have a hunting license in the first place. These requirements violate the Second Amendment because they directly restrict firearm acquisition by people who have full constitutional rights. The District Court erred in concluding that neither the plaintext nor the historical requirements would have shown a violation here, and this Court should reverse. I'll start with the plaintext. Under Bruin, the threshold issue in any Second Amendment case is whether or not the conduct a person wishes to engage in is covered by the plaintext of the Second Amendment. Here, 18 to 20-year-olds are part of the people who have rights. The semi-automatic centerfire rifles and other long guns they wish to acquire are undeniably arms. And so the question, the fighting issue here before this Court, is whether or not the right to keep and bear them is implicated by these restrictions. The state has argued that they're not because these restrictions essentially do not entirely bar all 18 to 20-year-olds from acquiring all arms. But that's not the threshold issue as this Court has ever conceived of it. This Court has applied the Meaningful Constraints Test to say that in a case where there's regulations directly on a seller or a manufacturer of an arm that may have incidental effects on purchasing and acquiring arms, you look to see whether or not that actually is blocking someone from acquiring arms. In this case, it's undeniable that these restrictions actually are blocking plaintiffs and plaintiff's members from acquiring arms. It is requiring that such a person obtain a hunting license overly burdensome. Is that problematic? So, Your Honor, I don't think that overly burdensome can be the question at this point. I think if it stops anybody from acquiring an arm, and in this case, it stops people who don't have hunting licenses from acquiring an arm. In B&L, this Court said that when it was discussing the Meaningful Constraints Test, it was not redoing the interest balancing that the Supreme Court rejected in Bruin. And if we start asking how serious is the burden, how difficult would it be for a person to go get a hunting license? And to be clear, our case is also that if that were the test, this is a meaningful burden on the right. So, we all agree that the proposed conduct is the commercial acquisition of long guns and semi-automatic rifles. Correct, Your Honor. That's the proposed conduct. Almost any form of acquisition, because even acquisition from a secondary seller, for example, in California has to be routed through a dealer. So, 18 to 20-year-olds can acquire long guns from family members or if they're subject to one of the narrow restrictions, like they're a member of the military or they're a member of the police. But other than that, even if there's a person who's not a commercial retailer, but he has a gun he'd like to sell to an 18-year-old, if they're not family members, they have to go through a licensed dealer. So, this effectively closes almost all avenues to acquiring an arm for our plaintiffs and their members. And again, Your Honor, this court has never construed the meaningful constraint test in B&L or in FLAW or in WIN to suggest that a restriction that directly stops certain sales from happening is not a complete, is not a meaningful constraint. I mean, WIN, I think, is a very important case here because in that case, people could still acquire arms. It was just metered out how often they could. I could buy a firearm, but then I would have to wait 30 days to acquire it again. So, it wasn't a complete ban, but the fact that that was less of a restriction than an all-out ban didn't mean that it wasn't a meaningful restraint. The fact that it's kept certain types of people, people who had just bought arms, from acquiring more was enough to say the Second Amendment's text is implicated here. But once, okay, just once the, once you undergo the requirements for getting a hunting license, this is a shall issue statute, right? If they just get this license, which you can do online, the instructor shall issue a certificate once the course of instruction is completed. And that's in the California Fish and Game Code. Doesn't that fall within Bruin Note 9, that the shall issue licensing regimes are presumptively valid? I'm glad you asked that question. I don't think it does, or I think footnote 9 does not immunize it for a couple of reasons. So, in footnote 9, we have to understand what Bruin was doing. It was identifying that 43 of the states had shall issue licensing regimes for carry that had objective and narrow criteria. And it was that those regimes are not unconstitutional for the reason that New York's regime was, which was that it had broad discretionary criteria. It was not saying that any regime with any criteria. But you say that obtaining a hunting license where there's no discretion involved, once you complete the course, you get your license? Right. But it's not that, the question is whether or not having a hunting license is an acceptable predicate to exercising the right to keep and bear arms. So, Bruin noted that most of the shall issue regimes that it was aware of were generally targeted, weeding out people who were unlawful users of firearms in the first place. People who had felony convictions, for instance. If you have to ask, are you a felon before you acquire a firearm or before you acquire a license to carry, that's a shall issue question that's aimed at getting at whether or not the person has a right to exercise in the first place. Here, I don't understand the state to be arguing that being a licensed hunter is a prerequisite to exercising the right. It's just a special restriction they place on 18-year-olds because of their age. And so, Bruin doesn't immunize, you could imagine, for instance, if the state said, you have to be an organ donor. If you're 18 to 20, you have to be, you have to check the box and say you're an organ donor in order to get a license. That would be a shall issue question, right? Because you either are or aren't. But that's totally unrelated to gun ownership. Right, but that's my point, Your Honor. Hunting is totally unrelated to the use of firearms for self-defense. There are law-abiding people who exercise the right to keep and bear arms who are hunters, and there are law-abiding people who exercise the right to keep and bear arms who are not hunters. It's one use, but it's not the only use. And California can't make that one use a restriction on all the other uses. I mean, if our plaintiffs wanted to hunt, they certainly need a hunting license. But if they just want to own a firearm, California doesn't require that any other adults have a hunting license before they own a firearm. You mean a long gun? Yes, sir, excuse me, a long gun. And again, all of that, Your Honor, that relates only to the long gun portion of this case, the semi-automatic centerfire rifles, of course, even with a hunting license. 18-year-olds can't acquire those. All right, well, let's move on to Bruin step two. Sure. So the history, Your Honor, in the history here, we take a look first at the founding. And the state's historical story for the court is that at the founding, there were contract rules that limited the ways that minors could dispose of property. They could only purchase certain things that were necessary. And the state argues that firearms were not necessaries. And they suggest that this is an adequate historical justification for the law. But applying Bruin's analogizing rubric where we ask how and why both a historical and a modern take a look at how. And I think on this front, Your Honor, the Supreme Court's recent decision in Hamani is very useful because in Hamani, some of the public drunkard laws that the Supreme Court was looking at, they had as their explicit rationale clear from the text of the statutes that they were worried that public drunkards or habitual drunkards, excuse me, were going to waste their money away and leave their wives and children as paupers because they couldn't control themselves. They were spending all their money on alcohol. That and the court said you cannot take irresponsibility with money and analogize that to a general dangerousness or lack of judgment. That was what the government was trying to do in Hamani. And the Supreme Court rejected that argument. The same argument is being made here, Your Honor. The state is saying that because 18 to 20 year olds at the time of the founding were minors and so had limits placed on their contracting abilities, which were based on the idea that minors would not be responsible with money, then we can say they're not responsible with guns either. And the other reason that breaks down, Your Honor, is because if we look to how the founders actually treated firearms, we see that they armed 18 year olds. There was no concern that they were not the sort of people who could- They didn't allow them to buy them. There is no restriction that the government has cited anywhere that says 18 year olds could not firearms. But they could not keep their own earnings and that would effectively preclude them from buying guns. Well, I mean, so the parents had a right to their children's earnings. I don't know that 18 year olds couldn't keep their own earnings. And of course, an 18 year old who was on his own, I believe, would keep his own earnings. But if he was living with his parents, his parents might take possession of them. But we have hard evidence that they had guns and could buy them in the form of the militia statutes. So in 1792, just a couple of months after the Second Amendment is ratified, the First Congress decrees that all militia members, which includes all men 18 to 45 who are able-bodied, must provide themselves with a musket or flintlock or other appropriate weapon for militia service. And that meant that they had to go out and acquire one if they didn't have one. Now, some states, the government makes the claim that some states required parents to acquire these for their children or made parents the ones who were punished if they failed to show up properly equipped. But the result here is the same. 18 year olds did have firearms and had to have them. And we can't read into the fact that in some cases, parents may have bought them for them, that there was a prohibition unstated in the law on 18 year olds going out and getting the What is the evidence that 18 year olds actually were purchasing firearms on their own without parents somehow being involved? So I think just as a prefatory matter, the burden is on the government to show that they were being stopped. And so my evidence that they were going out and buying them is that there was a federal statute and several state statutes telling them they had to provide themselves with them. I think providing yourself with firearm means either you already have one or you have to go buy one. Because the reason why I asked this question is because when I was a kid spending my summers in the Central Valley, my family had firearms. And so I had access to firearms and I shot firearms. But I as a 12 year old, I didn't think I had the right to go buy one. I mean, in fact, I knew I couldn't do that, even though I had access to them provided by my parents. So the fact that my parents provided me the firearm, in my mind, doesn't mean all of a sudden I had the right to go to Big Five and buy one. So help me get over that hump, because it seems to me the argument here that the 18 to 20 year olds back in 18, 17, 92 had access to firearms if they were being provided by their parents. That's not the same as then going. I understand it's their burden to show otherwise, but what's your response to that, that merely having access to them is not the same as actually having the power to buy them? Because, Your Honor, what the court, what they have to show is that they were restricted from acquiring them. On a blank slate, if there were laws from the founding that said 18 year olds can't go to a store and buy a firearm because we don't, for the same reasons that California won't let them do it today, that would be an analog. But there is no evidence of that. So what we instead have is strong evidence that they had to have them. It was not every state that said that parents were the ones who were on the hook for them to acquire them or who would be punished if their 18 year olds didn't have them. And this was a debated point in Congress. So when Congress is debating the original Militia Act, they debated both whether or not the state should provide them with firearms. And they all said it would be better off, or not they all said, but the ultimate conclusion was that people would prefer to provide their own. And they also debated what was the best age to start militia service at. And it's not that militia service somehow conferred a new right on these people, but Heller tells us the militia is a subset of the people. And if the purpose of the right is to prevent elimination of the militia, then at least those people who are members of the militia need to have full rights regarding firearms. So sorry to interrupt, but I need you to clarify then for me. Why then were these 18 to 20 year olds back at the 1790s or so, not then if they were to try to purchase a gun, they enter into a contract. We were told guns are very expensive back then. They were not easy to come by. They wouldn't be held to it though, because they were minors. Well, Your Honor, so they could revoke it upon reaching the age of majority. But that is, to be clear, I think Judge Quattlebaum's dissent in McCoy is very good on this. He emphasized that this was not a situation where a person who was going to go sell a firearm, if he was doing that to an 18 year old, he was leaving himself open to the possibility of just losing all his money and the firearm. You could undo the contract at 21 if it was proven not to be a necessary. But A, we argue in our briefs that I think because they were mandated to have them by law, that is exactly the sort of thing that would have been considered necessary. And B, there's no evidence really that people were refusing to sell firearms to minors in this circumstance, probably because A, they found that they were likely to be necessaries or B, because the risk was small enough that it was worth doing. Were you able to find any case law that would support that they said, it's worth the risk because it will be found necessary or was found necessary by the court? Well, I mean, so in a sort of reverse way, the state has cited the case Saunders-Glover, and it doesn't provide us a lot of detail on what this minor, his situation was, but you can kind of get a picture of what was going on from the list of things that he had bought. It was fiddle strings, whiskey, a saddle, some pistols. And the court said that those were not necessaries in his circumstance. That did not hold though that firearms were never necessaries and pistols were not the type of firearms that were used in militia service at the time. And more importantly, it does show that people were in fact actually making contracts with 18 year olds for items like this. So I think that there is evidence in that form that firearms were being sold. We have other evidence. We cite a couple other English cases in our brief. And the most notable one I think is a person who was in the militia and was a gentleman could buy as a necessary, a militia uniform for his servant, because it was expected that a person in his station in life would have a servant who would have a uniform. And if that's the metric, if the metric is what is a person in your position in life expected to have, well then we have very good evidence from the militia acts that everybody who was 18 years old or all adult males who were 18 years old were expected to have firearms at the time and they would have been treated as necessaries. But I don't equate that though directly with them being able to be the ones who purchase it. Again, there was no restriction on them being able to purchase it. It may have been that in many cases, parents provided them with firearms, but they were nevertheless provided with firearms. And there was no reason why they couldn't have been the ones to provide themselves with firearms. That was a legal restriction. We agreed earlier that it wasn't just having a long gun. It's the right to commercially purchase. Didn't we agree at the beginning of this? Well, the right to purchase a firearm, yes. Yeah, right. We agreed to that. Now I hear you saying provided with firearm. And I understand it too, there were several state militia regulations that expressly stated that the parents and guardians should be responsible for providing those under the age of majority, the firearms, not that they were able to go purchase them themselves. And that's what we're talking about here. Yes, Your Honor. But I think a couple of things. First of all, if we're talking about purchasing firearms, the other part of our argument here is that our plaintiffs are not minors anymore. So these contracting restrictions, they don't apply to 18-year-olds today. It's definitional to adulthood that you're in full possession of your constitutional rights. There is no other constitutional right 18-year-olds don't have in this country. And there's no other constitutional right we would leave at the whim of if you can find some way other than the main way anybody gets firearms in this country by buying them. And again, at the founding, what we have is economic speculation that based on contracting principles, 18-year-olds may have had a hard time in some circumstances acquiring a firearm. That is vastly different from the state saying it's a criminal offense to sell a firearm to an 18-year-old and you'll lose your license. That obliterates the commercial market for 18-year-olds to acquire firearms. And it's not at all the same as saying if you sell a firearm to a minor and that minor winds up revoking it, you'd have to show that it's necessary in order to keep from engaging in a return. I see that I'm into my rebuttal time. If the court has further questions, I'm happy to answer them. Otherwise, I'll... Okay. Now, okay. Save your time. Thank you, Your Honor. Thank you, counsel. Good morning, and may it please the court. Jane Riley on behalf of Attorney General Rob Bonta and Director Allison Mendoza. California sets reasonable limits on commercial firearm transactions that involve 18- to 20-year-olds. Members of this age group can purchase most long guns with a valid hunting license, which can be obtained immediately after completing a course that covers firearm transactions. In addition, California has established a firearm safety principles. Under Bruin, this shall issue licensing regime is presumptively lawful. And although California restricts most 18- to 20-year-olds from purchasing the most lethal type of semi-automatic rifle, that law is consistent with the historical principle that states may restrict those under 21 years of age from purchasing firearms. California's common sense limitations comply with the Second Amendment. I'm happy to respond to any questions that the court may have. Otherwise, I'd like to start by clarifying the scope of the state's arguments in this case. We acknowledge that there are different analytical frameworks that apply to the hunting license exemption on one hand and the semi-automatic centerfire rifle restrictions on the other. As to the hunting license exemption, we've raised the argument that that does not implicate the plain text of the Second Amendment because it does not meaningfully constrain anyone's ability to keep and bear arms. And it is also a shall issue licensing regime that Bruin deems presumptively lawful. And separately, the semi-automatic centerfire rifle provisions, we are not raising that threshold textual argument. Instead, we are defending that at Bruin's historical stage. Counsel, let me ask you about the hunting license. Your friend on the other side said, yeah, but you know what? I have clients who don't want to hunt. Why should they have to go get a hunting license if that's not why they want to use their gun? They want to use their gun for self-defense. How is that requiring those folks to get a hunting license not significantly impacting their Second Amendment rights? Sure, Your Honor. The reason behind the hunting license requirement is that in order to obtain a hunting license, folks need to undergo extensive firearm safety training. And importantly, they have to pass a practical exam where instructors can actually observe students handling firearms and ensure that they know how to do so safely. So my friend on the other side compared this to an organ donor requirement. And as Judge Wardlaw noted, that's completely untethered from firearm safety or any practical consideration that could come into play here. But because 18 to 20-year-olds, as the history shows, were considered to lack the reason and judgment necessary to purchase firearms on their own, requiring them to undergo this more extensive firearm safety training and ensure that they can pass a practical exam before they purchase firearms on their own is not an undue burden on their ability to keep and bear arms. Because again, as soon as they pass the course, they are able to obtain a license. The license, if they go in person, is issued to them immediately. If they pay online, it's issued usually in a matter of hours. So there's no discretion involved. As long as you pass the course and show that you can safely handle firearms, you are issued a license and then can use that to purchase long guns. So does the Second Amendment require you to know how to safely handle a gun before you can get one? Your Honor, we do think that under Bruin Footnote 9, which specifically notes that shall issue licensing requirements that include firearm safety education requirements are presumptively lawful. We do think that the Supreme Court has contemplated this in Bruin in its post-Bruin jurisprudence and found that that is a requirement that the state can set, as long as that requirement is not used to abusive ends or is used to prevent or deny people from exercising their Second Amendment right to keep and bear arms. And the hunting license requirement is not abusive. In fact, the plaintiffs in this case have not alleged that it is. They have simply said that as a matter of personal choice, they do not want to obtain a hunting license. They have not alleged that it's too expensive. It's oftentimes offered for free by volunteer instructors. They've not alleged that it's unduly difficult to pass. The pass rate even in the plaintiff's brief is conceded to be quite high. So again, this is just a requirement to ensure that 18 to 20-year-olds who are purchasing long guns on their own are sufficiently responsible and safe to be able to do so. I'd like to address my friend on the other side's point that the hunting license burden doesn't matter here. I don't see how that argument can be squared with Bruin footnote 9, which again describes shall issue licensing regimes as presumptively lawful. Any type of requirement that's set as a prerequisite by the state to purchase or use firearms is going to impose some degree of effort on the part of the person who's undertaking that. But Bruin still acknowledges that these are presumptively lawful. And again, for the reasons I discussed with Judge DeAlba, there's no evidence here that the hunting license requirement is abusive or unduly discretionary. For all these reasons, we think that the hunting license exemption does not implicate the plain text of the Second Amendment and therefore can be upheld at Bruin's threshold stage. But if the court disagrees, it also is supported by the historical record that we've put together. And with that, I do want to turn to that historical record as it relates to the semi-automatic centerfire rifle provisions. My friend on the other side invoked the militia laws. Those only required militiamen 18 to 20 years old to provide themselves with a firearm. And as the FOIA decision, there's any number of ways a person can provide themselves with a firearm without going out and purchasing one on their own, including receiving one from their parents or acquiring the family firearm and using it for militia service. Additionally, states recognized that those under 21 years of age would not be able to purchase firearms on their own for militia service. And they responded to that issue by imposing laws that either required parents to purchase firearms for their militia-aged infant children or exempting those under 21 from the firearm requirement entirely. And by the year 1826, 21 out of 24 states had passed such laws, and that covered 89 percent of the national population. I also want to note the militia laws are a national service requirement. It was a policy decision based on national security needs. It's not reflective of the standalone constitutional right. And we know that because states did have discretion to set the age of militia service higher than 18, and several chose to do so. Council, what's your response to opposing council's point about the lack of evidence showing a ban on 18 to 20-year-olds to acquire a gun on their own? As to the founding era, a lack of affirmative restriction, first, we would say that such a restriction is not required under Rahimi. In that case, the court upheld the challenge law, even though there were no founding era or post-ratification statutes that expressly disarmed domestic abusers. Also, in the context of the history, it wouldn't have been necessary for founding era legislatures to expressly prohibit those under 21 from purchasing firearms because they were already precluded from doing so by the infancy doctrine. And we know from Justice Barrett's concurrence in Rahimi that we can't assume that founding era legislatures legislated to the maximum of their regulatory authority. So let's go back then to the infancy doctrine. What evidence do we have that under that doctrine, an 18-year-old could not acquire, purchase a firearm? Sure, your honor. So the tradition is broader than that. Those under 21 at the time of the founding were considered infants who lacked full reasoning and judgment capabilities. And for that reason, they were prohibited from engaging in a whole host of activities, and that included making purchases, including purchases of firearms. And we know this because this is explained in the NRA v. Bondi decision from the 11th Circuit, and also the McCoy decision from the Fourth Circuit. At the time of the founding, most transactions were done via credit, not by cash. And we've put together a robust historical record, particularly the Cornell and Brewer Declaration, showing that those under the age of 21 could not enter into contracts. And as to cash purchases, even though those were overall generally rare, we've also put forth historical evidence showing that those under 21 did not control their wages, their parents did. And so they would not have had access to the cash that they would need to purchase a firearm. And even if they did, that purchase would be voidable. And we think that this shows a very clear historical understanding that those under 21 years of age were understood not to have a standalone right to purchase firearms on their own. And in fact, if they did have such a recognized right, we would expect to see carve-outs to the general infancy doctrine prohibition on making purchases. To my friend on the other side's argument about necessaries, I would direct the court to the declaration of Professor Brewer. She explains that she did an exhaustive search of the founding era evidence and did not find any indication that firearms were considered necessaries. Instead, the historical sources show that necessaries were limited to food, educational expenses, clothing, and medicine, and only then if the parents of the person under 21 could not provide those. So counsel, let me go back though to your prohibition for minors or those in infancy between ages 18 and 20 who could not purchase guns. It wasn't that they weren't allowed to purchase them. It was that if they purchased them, the seller was doing it at their own risk, correct? Because then the 18-year-old could say, ah, forget it, I don't have money to pay you. It wasn't that it was, you know, that an 18-year-old could, you know, be imprisoned or, you know, have to pay a fine for having purchased a gun, though. That's correct as to there were no penalties on the infant purchaser, and that remains true of California's law today. There are no criminal penalties associated with 18- to 20-year-olds who somehow manage to purchase firearms without following the correct procedures. And going back to the founding era, I think it's important to remember in the context of the history, the infancy doctrine served as a practical barrier that essentially precluded minors from purchasing firearms. And for that reason, there wouldn't have been a reason for founding era legislatures to issue duplicative affirmative statutes that would prevent these purchases from happening. If I could make one additional point on my friend's argument that there were no founding era affirmative restrictions, one issue with that argument is that as far as anyone's aware, there were no founding era affirmative restrictions for anyone of any age to purchase firearms. So if the plaintiffs were correct that that were dispositive, states presumably could not set any minimum age for firearm purchases. They couldn't prevent a 14-year-old high school freshman from walking into a gun store and purchasing a firearm without their parents' knowledge or consent. So we think that the fact that plaintiffs have failed to grapple with that dangerous lack of limiting principle undermines our argument there. So I think one argument that your friend on the other side made that is compelling, but I think it's an equal protection argument, perhaps more than a Second Amendment argument, but he did make the point that this is the only constitutional right that 18-year-olds don't enjoy. And I remember when I was about to turn 18, people under 21 couldn't vote, and it was the Vietnam era. And I turned 18, and they passed that law, and that was the 1972 was the first year I got to vote. And so I'm just wondering whether that is a compelling argument because, I mean, or is it brought under the wrong provision of the Constitution? Sure, Your Honor. My first response would be that states can and do set different minimum ages in different legal contexts, including as to constitutional rights. For example, some states like Mississippi set the minimum age to marry at the age of 21, and that is a recognized constitutional right. And as the 11th Circuit held en banc in the NRA v. Bondi case, an evolving standard of adulthood outside of the context of the Second Amendment, or even firearms more generally, cannot change the founding era understanding, which was that those under 21 were understood not to be able to purchase firearms. I'd also note this court rejected a similar argument in the Perez-Garcia case, where the plaintiffs in that case tried to distinguish the historical tradition based on the fact that today pretrial release is the norm, whereas at the time of the founding, pretrial detention was far more common. And this court rejected that argument, finding that that change in pretrial detention norms did not change the founding era understanding that those awaiting criminal trial could be disarmed by the state. So, or you could respond, during the founding era, no one could vote other than white men who held property. So we should be limited to that today. Your Honor, any type of historical precedent that is facially unconstitutional under due process, excuse me, under equal protection grounds, this court in Duarte instructs us how to handle that, which is to say that even abhorrent historical laws can still give us non-discriminatory historical principles that courts can apply. And importantly here, the state is not relying on any facially discriminatory historical laws in support of its law here. We are only relying on the common law infancy tradition, which was again, based on age, which is not a suspect class. And we're also relying on reconstruction era statutes, which restricted those under 21 from purchasing firearms, again, which were not discriminatory on any improper basis. And I would like to turn to those reconstruction era statutes, because we know from Bruin, Rahimi, and most recently in Hamani, that the court can look to those later laws to confirm the founding era understanding. And here, what we see is as soon as the common law infancy tradition became less effective at preventing those under 21 from purchasing firearms, there was a corresponding uptick in those under 21 purchasing firearms and using them in a manner that was passing affirmative statutes that prevented those under 21 from purchasing firearms. Between 1856 and 1900, there were 19 states in the District of Columbia that had passed such laws. And we think that lends additional support and clarification to the founding era infancy tradition that we've discussed earlier. If I could return momentarily to the necessaries argument. My friend on the other side noted, Judge Owens, that the plaintiffs do not have a burden to establish a historical record. And we agree with that. But we would posit that we have put forth extensive historical records showing that at the time of the founding, firearms were not considered necessaries and were not available for purchase by those under 21 years of age. And the plaintiffs did have an opportunity to supplement the historical record. And they have not been able to produce any evidence showing that at the time of the founding, firearms were considered necessaries. And especially given the reliance on the militia laws, as I explained earlier, those did not contemplate that those under 21 years of age were purchasing their own arms for militia service. So can you explain to me, is there a circuit split on this 18 to 20 regulation of firearms? There is, Your Honor. On one side, you have the 4th, 10th, and 11th circuits, which have all upheld restrictions on commercial firearm transactions for those under 21. The one outlier is the 5th Circuit's decision in Reese. And we would encourage the court to agree with the 4th, 10th, and 11th circuits in disagreeing with Reese, because Reese made several analytical errors at Bruin's second step. First, it did not address the founding era infancy tradition. Second, it misunderstood the import of the militia laws. And third, it discounted the post-ratification statutes as coming too late in time, even though the court there acknowledged that they were relevantly similar. So there is a preexisting circuit split, but this court would be creating one by ruling in California's favor here. And I take it, though, the 4th Circuit and the 11th Circuit analyzed this differently than the 10th Circuit did. That's correct, Your Honor. Okay. So between those two, which one do you think we should follow? We think you should follow the approach taken by the 4th and 11th Circuits in upholding the semi-automatic centerfire rifle restrictions at the historical step. I would note that the laws at issue in the 4th, 10th, and 11th Circuit cases didn't have anything like the hunting license exemption. So those statutes were more restrictive than California's law. And as to the hunting license exemption, as I explained earlier, we do think the court should uphold that at the textual threshold inquiry, because it does not meaningfully constrain any person's right to keep and bear arms, and it's a presumptively lawful shall issue license. Right. So if we're going to chart out the long gun, you think we should do it on a BNL, but we also could do it as shall issue footnote nine? That's correct. One or the other? Either one would be sufficient on its own. Or we could do everything on step two of Bruin. That's correct. The historical tradition supports both here. If the court has no further questions, we would ask that you affirm the district court's judgment. Thank you. Thank you, counsel. You have a couple of minutes. Mr. Bergstrom. Thank you, Your Honor. I'll be brief. I encourage this court to look at the Supreme Court's decision on Thursday in Himani. And one thing in particular, when the court was laying out the how and the why analysis and explaining why the government's analogs didn't meet what the government needed to do for its burden, they noted that the laws targeted different kinds of people, did so for different purposes, and operated in different ways. The very same thing could be said in this case, and that's enough to resolve it. The fundamental problem for the government is that at the founding, 18 to 20-year-olds were armed. And today, they're trying to justify a law that boxes 18 to 20-year-olds out of the commercial market, which is the most common way to get firearms. And there's just no way to square that circle. The government said here that there were no penalties for the purchasers at the founding. An 18-year-old who bought a firearm, there was no penalty for doing so. There was no penalty for the seller either. There was simply no law that stopped them from making that purchase. They may have decided not to because of their own conception of the risk of a transaction, but that is not equivalent to California saying, you can't do this. It's a criminal offense to to an 18-year-old who doesn't have a hunting license or to sell any semi-automatic rifle to them. Your Honor, you mentioned that this seems like an equal protection argument because this is sort of the one area where we don't give 18-year-olds full legal rights. You made that point, and it got me to thinking about how the Supreme Court might view that issue. Yeah, and I think there's a couple ways that I want to explain why it's a Second Amendment argument as well. The Supreme Court has said the Second Amendment is not a second-class right subject to different rules than the other portions of the Bill of Rights. It's definitional to adulthood that adults are people who have their full legal rights. And so I think that the fact that these laws in history, if we accept everything the government has said, and clearly I don't, but if we accept that everything they said, at most they've shown that at the founding, people who were minors, who had guardians for their care and protection, had somewhat circumscribed rights in this area. That is not the same as saying to an 18-year-old who's on his own in the world, fully responsible for himself or herself and their care and protection, that they can't exercise the right to keep and bear arms. If the Court has further questions. Just one point, actually, for both parties. We have one more Supreme Court case pending. I would not be shocked if we ask you all for a supplemental briefing on what that case means, so just make sure your calendars are available. Because it may be a short turnaround, because we want to get this done in a timely fashion. Just be ready to get an order saying- Yeah, the law clerks are leaving. Yeah. So we want this turned around. That's all I got. Thank you, Your Honor. All right. Thank you. Okay, Poway, weapons and gear versus Bonta is submitted, and this session of the Court is adjourned for today. Thank you. All rise. This Court for this session stands adjourned.
judges: WARDLAW, OWENS, ALBA